### *MELCHIOR J. SCHAAL V. EDWARD W. HECK.

1. EXERCISE OF THE COURT'S DISCRETION REGARDING CROSS-EXAMINATION OF WITNESSES.

   Where, during the cross-examination of a witness, the counsel on the other side interrupts such cross-examinations by asking the witness questions which the court allows to be answered: · *Held*, that such action on the part of the counsel is irregular, but that it is within the discretion of the trial court to allow such an irregularity to take place, and, therefore, does not constitute error.

2. PRACTICE OF BRINGING IN WITNESSES IN REBUTTAL.

   It is not an abuse of the court's discretion in the trial of a case, to allow one of the parties to bring witnesses in rebuttal to testify to certain matters that were claimed to be properly matters in chief, concerning which such party had examined certain witnesses.

3. FORM OF QUESTION PUT TO EXPERT WITNESSES.

   Where the record in a case shows that the form of the question put to expert witnesses was in general somewhat irregular and a departure from the ordinary and better form. *Held*, that unless such irregularity in the form resulted in some prejudice fairly appearing upon the record, it will not act to defeat the verdict or the judgment that may be rendered.

---

* The judgment in this case was affirmed by the Supreme Court without report, 54 O. S., 618. ·Spear and Burkett, JJ., dissented.

4. DUTY OF MASTER TO HIS WORKMEN.

> A master in the construction of a building is in duty bound to furnish appliances that are reasonably safe, for his workmen to work upon and he is charged with the duty of using ordinary and reasonable care to determine whether such materials are safe or not so, although he may not have known of the defect, still if by the exercise of ordinary and reasonable care he would have known it, he will be charged with notice of a defect that subsequently is shown to exist.

BENTLEY, J. (orally.)

I shall not attempt to go over in detail and consider all of the many exceptions that were taken during the trial of this case. The record is quite long, and the exceptions are various. I will dispose of all the objections and exceptions in groups, without specially turning to each particular one. In order to do this with any fair degree of brevity, it will be necessary to have before us the main outlines of the matters involved in the case, and I will state them from memory, as they were presented by the pleadings and the record, but perhaps not with entire accuracy.

Nearly four years prior to February 15, 1893, the plaintiff below, Edward W. Heck, a young man, was apprenticed to the defendant below, the plaintiff in error here, Melchior J. Schaal, to learn the trade of a brick mason. It seems that the terms of apprenticeship were fixed in some way by some labor union, and the precise terms of the contract do not appear anywhere in the record; but Mr. Schaal accepted Mr. Heck as his apprentice in the business, and Mr. Heck entered the employment. Mr. Schaal was a building contractor, and had built quite a large number of important buildings in the city of Toledo, and, I believe, was himself a practical brick mason, with some years of experience. A few weeks or so prior to February 15, 1893, Mr. Schaal took the contract of the Toledo Electric Company to build for them a large brick structure as a power house on Water street, in the city, a couple of blocks north of Cherry street. During all of the time intervening between the beginning of this apprenticeship of Mr. Heck and the building of this structure in question, Mr. Heck had worked with the other workmen of Mr. Schaal about brick laying, and laid up or assisted in laying up walls such as are ordinarily used in buildings around the city. This building had progressed to some extent by February 15, 1893, and there was then to do about it the finishing of a wall—perhaps it might be termed the end wall—fronting on Water street. It was to be a solid brick wall, twelve inches in thickness, from the ground up to a certain cornice which I will mention hereafter. At this time this wall had been started, and had been worked upon the day before February 15, and brought up to a certain height, and, as was usual, and customary, and proper in the building of a twelve-inch wall, at about every seventh course of brick, the three courses constituting the wall were tied together by a tying course, or "headers" as some of the witnesses call them. No complaint is made but that the wall was properly made, so far as it stood on February 15, the day in question. At that time it had been brought up above the second story. In laying the wall it was customary, and, it seems by the evidence, entirely proper, to lay the outside course the width of a brick, viz.: four inches, up a certain distance first, then the middle course also of four inches, next to that, and the tie put in at each seventh course; and when the outside and middle wall were thus put seven courses high, the inside four-inch wall was also brought up and tied to the middle wall. So that when these ties were in,

it constituted a wall twelve inches in thickness, consisting of three separate layers of brick, but tied together firmly in the manner that I have stated, being laid up with ordinary mortar.

On the day in question the plaintiff below, Mr. Heck, and four others, bricklayers, were at work upon this wall to carry it up further. It was to be built in all upwards of forty feet, perhaps forty-five. They proceeded to lay the wall, using a scaffold which had been prepared, resting upon boards laid across the floor joists, until they had raised the entire wall some two and a half or three feet above the top of this scaffold. Then, without making any other scaffold, or raising this one, they proceeded to lay the wall up some farther. They laid the outside wall up to a certain distance, perhaps making about forty feet in length in all, until they reached a certain place where there was a projection of brick to be put in, the brick projecting outwardly from the wall beyond its general surface. I will speak of that projection more particularly soon. Then the middle wall was built up to that place, or to about that place, and tied. But the inner wall, it is claimed by the plaintiff, was not brought up to that point. Upon the part of the defendant below we understand that the claim is that the inner wall itself was brought to about that point, so that up to that point there was in fact a twelve-inch wall built in the ordinary way, that had been laid below, and properly tied together. But the claim of the plaintiff is that up to that point where the projection started there was but the outside and middle tier of brick, laid so that it made a wall, when the projection was reached, of only eight inches in thickness. At that height of wall this projection started. It was built in such a way that the first tier of brick which was to construct the projection projected an inch beyond the outside surface of the wall, and the next course above that projected still another inch beyond that course, and another one projected still an inch farther, and the fourth course projected an inch still farther; so that the effect was in all to make a projection four inches in thickness, extending that far out beyond the general surface of the wall below. It is claimed by the plaintiff that this wall, after it had reached the place where this projection came in, was carried up in that way, viz: without extending and carrying up with it the inner four inch tier of brick, but only the outside and middle tier and those tiers which constituted the projection; that that was carried up quite a distance—several feet—and then on top of that the projection of four inches was continued, together with another four-inch tier of brick next inside of that, which last four-inch tier was directly above and might be said to be a continuation of the original outside tier of the brick wall. It is claimed by the plaintiff that this manner of doing the work was known to the defendant, who was there some of the time, perhaps, and it was also known to Melchior Schaal, Jr., or at least to young Melchior Schaal, a nephew of the defendant, who was the foreman of the defendant in charge of these men in the absence of the defendant himself; that in fact he, the nephew, did part of this work himself, and at least laid what was called the "trigs" on top of the wall. The wall in the center of the building was to be carried up some fourteen inches above the level of the corners of the building, making a sort of a flat gable at that end to receive the roof. Plaintiff claims that the foreman laid this trig, as it was called, in the center upon the top of this wall, carrying up these two courses upon the outside to the final hight of the wall at that point, but leaving the inmost tier of the brick wall,

as I have stated, away down below. And it appears by the testimony that in this laying of the trig, so-called, the plaintiff Heck assisted—that is, he, standing on the studding or platform below, handed up the brick and the mortar to the foreman, who then climbed down from that place and directed the plaintiff to bring up those parts of the wall that had not been brought up to their full hight; a line being stretched from the top of this trig down to the corners of the building, thus affording a gauge to determine the hight of the wall at all places, along a gradual and uniform slope which was to be from the top of the trig to the corner of the building. The plaintiff claims that just after he had begun to comply with the orders of the foreman to lay up the brick upon the outside wall below the trig—about two minutes after he began that work, and two or three minutes after the foreman got down from the place, the wall fell— that is, the portion of the wall about where he was standing fell—outwardly, when he was necessarily standing upon a portion of the incompleted part of it, and he being unable to grasp anything, or to save himself, was precipitated with the portion of wall that thus fell, landing upon the bricks that had fallen down just ahead of him, and that in so falling he received a very serious injury to his foot and other portions of the body, and was permanently injured.

He charges that this contractor, the defendant below, was guilty of negligence in two or three particulars, viz: in not providing or seeing that there was provided, a staging built and kept up so high, as the wall progressed, that the workmen could stand upon it, and not be required to stand upon any portion of the wall while laying it up. Plaintiff below claims that if the defendant below had done this, he, the plaintiff below, would have been standing upon a scaffold, and if the wall had fallen, he would not have gone with it, and perhaps the wall itself would not have fallen if the work had been done from the staging. Plaintiff below also claims that the foreman was negligent in requiring him to lay up the outside course of this wall above this projection, without seeing to it that the wall below had been completed to its full thickness, and the inside course brought up and properly tied. He claims that if that had been done, the projection would thus have been tied to the main wall, and would have been supported by it, so that it would have been in no danger of falling.

The claim of defendant below is that the wall was built in accordance with the usual way of building such walls, that he had no notice or knowledge that there was any danger about it, and that he was not chargeable with any such notice or knowledge; that it was usual to build such walls without using a scaffold at the very top, and by standing upon portions of the wall; that he had no facts from which he ought to be charged with notice or knowledge that he was putting his workmen in any danger; and he also claims that whatever danger there was, the plaintiff below had as much knowledge of, and was chargeable with as great a knowledge of, as was he himself, and if the plaintiff worked in a place of danger he was chargeable with contributory negligence. if by reason of his working there he suffered this injury.

This presents the main controversies in the case as they were presented to the jury, except that I might state that the answer of the defendant below, while admitting that this man had been working for him as his apprentice, yet in the form of a general denial, denied that this wall fell in this manner, or at all, or that the plaintiff was injured, or that the defendant below himself was guilty of any negligence.

The trial of the case was conducted, as it would seem from this record, with a great deal of vigor and considerable vehemence, upon both sides. It was a hard and tenaciously fought case. Our late lamented brother Ford appeared in the trial of the plaintiff below, and Judge Doyle for the defendant, Mr. Scott being there a portion of the time assisting in the defense.

There are throughout the record quite a number of exceptions that are claimed to several errors of the court. They are, in part such as these: When the attorney for the defendant was cross-examining several of the witnesses for the plaintiff, and had got to a certain place in his examination, counsel for the plaintiff interfered and assumed the right himself to ask the witness certain questions. In one case, as I remember, the witness had made a certain answer, upon cross examination, and counsel for the plaintiff said: "What do you mean by that?" And there was an objection, and he said, "I don't understand what the witness means." Thereupon an altercation transpired between counsel in the nature of questions and answers, and replies, and finally the court seemed to allow counsel for the plaintiff to have his question answered. In several instances things of that nature occurred. We think the record shows that the action of counsel for plaintiff was irregular. It would have been proper enough for the court to have stopped proceedings of that kind, and to have compelled counsel to await the time when he could take the witness for re-examination, and straighten up any of these matters; but at the same time, all the cases of that kind that are pointed out in the record, we think come fairly within the rule which regulates the discretion of the trial court, and that in its rulings upon that matter it was simply exercising the discretion which it had in the conduct of the trial, and that error cannot be predicated upon any action occurring at that time.

Counsel for plaintiff in error have argued another matter involving the court's discretion also. Certain objections were made and exceptions taken for the reason that the plaintiff below was allowed to bring witnesses in rebuttal to testify to certain matters that were claimed to be properly matters in chief concerning which plaintiff had examined certain witnesses, and perhaps in some cases the witness had been examined upon the same question in chief that was now propounded to him in rebuttal. The court, however, permitted that, and said in so many words that it regarded it as coming within the discretion which was allowed. While to have ruled the other way would have been perfectly proper, yet we cannot say that this was an abuse of discretion, or that it seemed to have resulted in any substantial prejudice to defendant below.

Quite a large number of exceptions are thus grouped and disposed of. There is, however, a serious matter presented which does not come under this head. The plaintiff below testified that immediately after he had fallen, he noticed that defendant himself was standing in a doorway near by, in view of him, and that the defendant, noticing him, began to curse and damn him, and instead of coming to help him, ran the other way, and went up to the top of the building; and it was some time after that, when he had been removed, that the defendant first came to him and made any inquiry regarding the hurt. Against the objections of counsel for the defendant below, the witness was allowed to answer the direct question, as to what, under circumstances of that kind, the defendant below did say to him, and exception was taken. The answer was, as I remember it, "How did that God damned fool fall down there?"

or words to that effect. A motion was made to rule this answer out, and the exception was fully preserved, and the question now presented is whether that was testimony that, under the circumstances of the case as they were then presented, was competent. It is claimed that it was after the accident; that the defendant, if liable at all, had already become liable by reason of facts that had then fully transpired; that this was a statement afterwards made, and its introduction was designed to prejudice the jury against him, as indicating that he treated the injury of the plaintiff brutally, and did not do what in fairness he ought to have done for him. On the other hand, it is argued by counsel that this was a part of the *res gesta;* that it was so soon after the transaction had taken place that it was a part of the transaction itself. And the court seemed to have admitted it under that view of the matter. Counsel for plaintiff below urged then, as the counsel now urges, that this contained an admission of the defendant of the mental capacity of the plaintiff; that he characterized him as a fool, admitting, therefore, that the plaintiff was not of fair mental capacity; and having done so, the jury had a right to consider that as indicating that the plaintiff was unlearned, ignorant, and not of ordinary capacity, and therefore that his action in standing upon the wall and in doing as he did, must be judged in the light of what he knew rather than what he didn't know. If this was a part of the *res gesta*, an expression made at the time regarding the cause of the accident, if made by the plaintiff below instead of the defendant, would also have been admissible. Suppose the plaintiff had cried out there, perhaps in answer to this question, that the wall had fallen, and that it had not been properly built, and that by reason of the negligence of defendant, or his foreman, the wall had fallen, he had tumbled out with it, and was injured. If this other statement was strictly a part of the *res gesta*, any other expression would be a part of the same transaction, if made by him. But I have in mind a case which would indicate that such an expression would not be a part of the *res gesta*, if made by the plaintiff below—a case decided by the Supreme Court, where a person had been knocked over into a ditch by the side of the railway track by the car or engine of the railway company. Some person immediately came to him, and while he was helping him out of the ditch, where he had been thrown, the injured person made an expression as to the cause of his being there, and how he happened to be there, and whether he had been knocked there by the engine, or something of that kind; but the Supreme Court held that that was simply a narration of a past occurrence and was not a part of the action itself and was not admissible. Without discussing this matter at length, we think this expression on the part of Mr. Schaal cannot be admissible as a part of the *res gesta*—of the transaction itself, by which the plaintiff below was injured. We think it is rather too fanciful a claim to say that it might be an admission that the man was in fact under-witted, or was a fool. It was an expression, evidently, of surprise, and perhaps of anger, and if admissible, would hardly come under that head. The court admitted it, and we are to say whether, under any view of the case, it could have been properly receivable. If it was, although received for an erroneous reason, we will not be warranted in setting aside the judgment.

That question must be viewed in the light of the issues presented by the pleadings. The defendant below in his answer had not admitted that the plaintiff was injured at all, but denied it; and had not admitted that the wall fell at all, but denied it; or that the plaintiff fell; and

those were matters to be proven upon the trial by the testimony in behalf of the plaintiff below. Did this expression in any way tend to support those issues? That the wall had fallen, that the plaintiff had fallen with it or had fallen at all, or had been injured? Now it seems at this time, if this testimony is true, that the defendant below was close by where he could observe the fact that something had happened. He looked at the place, and his attention was called to the fact that the plaintiff was there under certain conditions, and it seemed to be called to his attention, and he then recognized, as his statement indicates, that not only was he there, but that he had fallen there. And then he proceeded to run to the top of the wall, immediately after observing that. It may not be, as the case went to the jury, that it appeared to them as if there was any real contention or real claim upon the part of defendant below that there was no such thing as the wall falling, or that there was no such thing as that the plaintiff below had fallen; yet the issues presented that, and the plaintiff below was entitled to any evidence that would tend fairly to support those issues, so far as they are material. Some of these at least, were material, and we think that we can see in that testimony what fairly tends to support the contention of the plaintiff below as against the absolute denials of defendant below.

The greater number of the other exceptions relate to objections regarding the form of the questions put to expert witnesses. It is claimed that the experts who were examined on behalf of the plaintiff below were not examined correctly; that questions were put to them in a form that was not admissible under the rules of evidence. It was claimed, for instance, in examining experts as to this wall being dangerous, or being laid up properly, that the order should have been to ask the question how such a wall as that should have been laid up in the ordinary way of laying up walls by workmen; and what was the ordinary and proper way to build a wall; and when the expert witness had answered that question, and had stated the proper and usual way to lay up a wall, then the jury were fully put in possession of the necessary facts to determine whether or not this wall as it was built, as related by the witnesses, complied with that usual, and ordinary and proper way; but that on the contrary, counsel for the plaintiff below asked of the expert witnesses when he had exhibited what he claimed to be a plat or a picture upon paper, showing how the wall was in fact built, whether or not a wall built in that way was built according to the usual and ordinary way or not, and if not, in what way it differed. That was substantially the way the questions were put, as a general thing. As to the mere form of the questions, while we think that the contention of counsel for the plaintiff in error is correct as to the proper method of making such proof ordinarily, yet we are unable to say that a departure from this ordinary and better form was really erroneous, or that the ruling of the court made in this particular in various places throughout the record may not be well regarded as coming fairly within those cases where the court has a discretion; and unless it resulted in some prejudice fairly appearing upon the record, it ought not to defeat the verdict or the judgment. And we think this may be said as to all such objections, that while the form of the questions was in general somewhat irregular, yet they were not calculated to mislead the jury, and the evidence which went in under them did not present the case unfairly for the consideration of the jury.

Schaal v. Heck.

The real essence of the trouble in this case, and which underlies the consideration of a great many objections that were made in the course of the trial and in the charge of the court or its action upon requests to charge, is this; whether in view of all the circumstances confessed in the case by the plaintiff below, he in fact has any case; whether in the laying up of such a wall as that, he being fully advised of the actual facts, was not in as good a position to judge as was the defendant below? He knew, for instance, that there was no scaffold. He knew that there was to be no scaffold. He knew that the wall had been laid up in the first place to the projection, or to the place where this projection was to be, as I have already said. He knew that the inner course was left down for several feet, and the middle course was not carried up into quite a distance as far as the outside course, after this projection had been reached. All these particular facts were right before the eyes of the plaintiff, and he knew them as thoroughly as the defendant did or could be held to know them. But he testifies that he did not know in fact that the wall was liable to fall, and did not know the danger. The other witnesses, masons of long experience, who worked with him, and who were working upon the same wall, liable to the same danger, also say that they didn't have any idea of there being any danger there, didn't realize that there was any danger; and it would seem fairly, from the the testimony, too, that neither the defendant nor his foreman knew, in that sense, of any danger from conducting the business in the way in which it was conducted. The question after all, in the case, is, whether, under the circumstances, the master, through his foreman, was charged with any greater duty to know of the danger than was the workman himself. If he was, it was because he was in duty bound to take greater precautions beforehand than was the workman; it was because there was a danger that really existed there, and must exist there, or would naturally exist there, of carrying on the business in that way, which was not so obvious, so open, and so patent, that any workman could see it well. If the danger was so open and visible that the ordinary brick mason working there should notice it, or would notice it, or should be held obligated to notice it, it does not present a case for expert testimony at all.

In the case of Railroad Co. v. Schultz, 43 O. S., 270, the court, after reviewing the authorities in this particular, state the general proposition deducible from them; and without reading only a very small portion, I call attention to what is said on page 282 in the 6th paragraph, although all of those paragraphs ought really to be read and considered in connection with this:

"6. Where it is practicable to place palpably before the jury the facts supporting their opinions, the witnesses should be restricted in their testimony to such facts, and the jurors left to form their opinion from these facts, unaided by the mere opinions of the witnesses."

If these facts present all that was to be presented, then it was not a case for expert testimony, and the facts being known to the plaintiff below, there was no chance for his making a case, or any reason for his recovery at all. And the 7th paragraph also may be read in this connection, upon the next page—283.

A consideration of this would naturally bring an allusion to what has been held by courts generally in this particular as to what matters the injured party is chargeable with knowledge of. The duty of the master in providing safe appliances and machinery, etc., has been discussed by our Supreme Court quite a number of times, beginning with a

case in 3 O. S., followed by a case in 4 O. S., and by a case in 5 O. S., and also by the case of Railroad Co. v. Webb, 12 O. S., 475, the opinion of which begins on page 486, and reviews at considerable length the authorities on this question, and finally states the rule that is settled in Ohio upon this question; the rule being that the master is not a guarantor of the sufficiency of all of the appliances which he shall get for the workman to use, but that in this particular he must use ordinary and reasonable care to provide safe appliances and machinery.

So the question is presented in this case whether or not there is any element in it which may show that the master had omitted to exercise reasonable caution and care in this matter as to things about which the plaintiff himself was not fully apprised and of which he was not fully aware at the time he did the work and received this injury. There are cases found in various states which I have not now time to cite, which hold the rule to be this, substantially: That while the master is in duty bound to furnish appliances that are reasonably safe, and must not furnish any materials for his workmen to work upon that are defective and unsafe, yet he is also charged with the duty of using ordinary and reasonable care to determine whether they are safe or not; and although he might not have known of the defect, still, if, by the exercise of ordinary and reasonable care he would have known it, he will be charged with a notice of a defect that subsequently is shown to exist. These authorities hold as to the workman himself, that while he takes the chances of working with any defective appliances, or working in any dangerous situation, which he knows the facts regarding, except where he has had a promise that the defect will be repaired, and relies on that and continues in the employment, yet he is as much chargeable with the risk as is the master; and that it is only such matters as he knows that he is thus chargeable with; and that he is not under the same obligation always to institute inquiry and make search and determine beforehand whether or not there exists or may exist some defect about the machinery or appliances about which or with which he is working. While that rule as thus stated may be too broad, we think there is and must be recognized a difference in the rule as applied to the master and the workman, that while it may not be that it will be always necessary that the workman have actual knowledge of a defect, or the dangers therefrom, and there may be cases where the circumstances are such that he is grossly negligent by failing to inquire under the particular circumstances of some particular case; yet it cannot be said that he is under the same obligation to search for hidden defects or possible dangers that the master rests under.

This case presents the question in line with these considerations, whether the danger and the defects which here existed were such that the master ought to have known about, or the servant might be excused in not knowing. In this connection it was left to the jury—and we think it might be left to the jury—to consider who the plaintiff was; that he had never been an independent workman himself planning buildings, or raising walls, or determining their thickness, just how they should be laid up; but he was working all of the time that he was working as a mason under the direction of others; and while he had acquired general skill and knowledge in the laying of walls in general, it does not appear that he had at any time been called upon to exercise his judgment regarding the safety of laying up such a wall as this. Neither does it appear with entire certainty that the danger that really existed of the falling of this wall, being built as it was, was such as would be perfectly apparent

to the jury upon the mere recital of the facts of the case. The margin along this line is not very large. It is a difficult and narrow margin. And to say whether this is a case where the facts alone should have been given to the jury without the aid of experts, the jury being left to determine whether or not the danger did exist or would exist, or was such in kind or character as that the master ought to have been held chargeable with a knowledge of, and should have been held to have provided against it, is a matter that may now fairly go for the consideration of the Supreme Court; because while the Supreme Court will not look into the testimony to determine the weight of the evidence as bearing upon the one side or the other, the questions that are made and the exceptions that are taken as to the introduction of evidence and the rulings of the court as to expert testimony, and the final charge of the court and its action upon the requests, will present as a matter of law we think substantially the same question.

Now, briefly as to the rulings upon the requests of the defendant below and the exceptions taken: There were no exceptions to the charge, except the exceptions taken to the refusal to charge certain requests proffered by defendant's counsel. There are only four or five of them. Defendant, by his counsel, excepted to the refusal of the court to give to the jury in charge defendant's request No. 1. That was a general request, that under the proof the jury would be directed to return a verdict for defendant. Based upon the considerations that I have already alluded to, we think that the court did not err in refusing that request; that there was enough in the case to go to the jury. Defendant likewise excepted to the modification by the court of defendant's request No. 3. The request was:

"The plaintiff is presumed to know the dangers incident to his business and to the work he engages to do, and the defendant has a right to assume and rely upon the plaintiff's having that knowledge."

The court says:

"Now, that we give you in charge, gentlemen; but we say to you that the evidence furnishes you with a knowledge of how long the plaintiff had been engaged in that business, and under the charge and direction of defendant. All this will be considered by you in that connection, because the parties will be presumed to have that knowledge which their relations necessarily covered to each other."

While that is not very clear, or the idea which the court had in view, perhaps, is not clearly expressed, yet we think that that request, might have been somewhat misleading without some words calling attention to the facts of the case, and that the jury, as the case went to them, had a right to consider in what manner, during the four years of his apprenticeship, the plaintiff had been working, and how far, therefore, the defendant below had a right to rely upon the plaintiff's experience and knowledge.

"Any danger which the defendant could by the exercise of ordinary care ascertain, the presumption is that plaintiff could also ascertain."

Judge Doyle: "Is that given?"

The Court: "Yes." (To the Jury:) "We are asked to say to you, gentlemen, that "The mere fact that no scaffold was furnished higher or different from what was furnished cannot be the basis of any recovery in this case." And, in that connection, is added: "There is no claim that any complaint was made of the want of a scaffold and a promise that it would be supplied, which induced plaintiff to continue in the work."

The question whether there was any such claim made being answered, that there was no claim made, then the court gave that request. Then occurred the following instruction :

" The conditions that would be deemed safe to workmen with ordinary skill in the business, would be justly regarded as safe by the defendant, unless the proof shows that by reason of some peculiar knowledge the defendant knew that it was unsafe."

Also :

" The fact that the plaintiff had not completed his four years' apprenticeship, makes no difference. If he had ordinary intelligence, he was bound to apply it, and if by the exercise of ordinary care he could have known the conditions he was working under, he is presumed to know them, and the law charges him with such knowledge."

The fifth request was proferred in this way : " The mere fact that no scaffold was furnished higher or different from what was furnished, cannot be the basis of any recovery in this case." Then the court added : "It it true as a matter of law that the mere absence of the scaffold itself, at a particular height, would not warrant a recovery. The plaintiff can recover only because of injury received by him caused by negligence upon the part of the defendant, and the mere fact of the scaffold not being at a sufficient height, standing by itself, would not warrant a finding by you of a judgment against the defendant." We do not see how that modification could or did result in any prejudice to the defendant below, or gave a rule of law that would tend to mislead the jury, or that it applied any principle that ought not to be applied in this case as against the defendant below.

While I am sorry to have been obliged to stumble over this matter in this way picking up as I could along, and perhaps omitting some things that ought to have been mentioned, I will say that we have considered the whole record, and while some of us, and perhaps all of us, think that upon the real facts of the case it may be doubtful whether it presents a case that ought to finally result in the verdict that was given, yet we are unable to say, applying the ordinary rules governing reviewing courts, that the record presents any matter so erroneous and prejudicial that we ought to disturb the judgment. For these reasons the judgment will be affirmed.

I will say in passing, that viewing the injury that was testified to as having been received by the plaintiff, it would not appear that the jury were led into giving any extravagant verdict, so far as the amount is concerned, by any passion or prejudice.

The judgment will be affirmed, but a certificate of reasonable cause for the proceedings in error will be entered.